# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW MOYNIHAN** and | : | CIVIL ACTION |
| **KAREN MOYNIHAN** | : | |
| *Plaintiffs, pro se* | : | NO. 18-4388 |
| | : | |
| v. | : | |
| | : | |
| **THE WEST CHESTER AREA** | : | |
| **SCHOOL DISTRICT** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                       JULY 16, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

This matter is before this Court on remand from the United States Court of Appeals for the Third Circuit ("Third Circuit").[1] This Court previously dismissed Plaintiffs' claims for lack of subject-matter jurisdiction. [*See* ECF 25, 26]. Plaintiffs appealed and the Third Circuit affirmed the dismissal, *in part*, to the extent that Plaintiffs sought injunctive and declaratory relief, and reversed the dismissal, *in part*, remanding this matter for further proceeding on Plaintiffs' claims seeking the remedies of compensatory education and reimbursement. On this remand issue, the Third Circuit wrote:

> [T]he Moynihans argue that their *pro se* complaint also brought claims for reimbursement and for compensatory education; and, construing their complaint liberally, we agree. The Moynihans sought <u>reimbursement</u> in the administrative proceedings. <u>See</u> ECF No. 2 at 21. Thus, when they requested that the District Court "reverse the Decisions of the [administrative hearing officer] . . . and find in our favor in all matters set forth therein," ECF No. 2 at 19, the Moynihans incorporated their claims <u>for reimbursement</u>. . . . Thus, we will vacate the District Court's order in part and remand for further proceedings on those claims.

---

[1]     *See Moynihan v. West Chester Area Sch. Dist.*, 813 F. App'x 825 (3d Cir. 2020).

*Moynihan*, 813 F. App'x at 827 (emphasis added).

In construing Plaintiffs' filings liberally, and after carefully considering the decisions of Hearing Officer's Decision and Order and the opinion of the Third Circuit, this Court's finds that in their due process complaints and corresponding administrative proceedings, Plaintiffs requested reimbursement of out-of-pocket expenses, and did not seek a compensatory education award.[2]

---

[2] In the due process complaints, Plaintiffs described the remedies sought as follows: (1) "we are seeking financial reimbursement for the costs that we have incurred since 2016 to address C.M.'s educational, social and emotional needs." Admin. R. Pt. 19, ECF 36-18, p. 37 (Ex. 22- Due Process Complaint 19245); and (2) "I am . . . requesting . . . reimbursement for our costs incurred for C.M.'s private math tutor in 2016, as well as the costs for his past weekly therapy treatment with Dr. Milks, which is on-going and will probably continue well into the future. I am also requesting that the WCASD pay for the costs incurred by us of C.M.'s future therapy with Dr. Milks." *Id*. at p. 40.

Nowhere in their due process complaints do Plaintiffs mention a request for a compensatory education award ("CEA"), which is an award of compensatory educational *services* to a disabled student, in order to "make up for past failures on the part of the" LEA that previously denied the student a FAPE. *Ferren C.*, 612 F.3d at 719. Typically, a CEA takes the form of *a number of hours* of services awarded to the student, which the LEA must provide. *See also Wilson v. D.C.*, 770 F. Supp. 2d 270, 276 (D.C.C. 2011) ("Compensatory education is, as the term suggests, educational service that is intended to compensate a disabled student who has been denied the individualized education guaranteed by the IDEA.").

In the Hearing Officer's Decision and Order, the Hearing Officer summarizes the relief Plaintiffs sought as: "reimbursement for payment of school taxes and out of pocket expenses, *i.e.*, reimbursement for the 9th grade, 10th grade and 11th grade school years." HOD at p. 10. Again, there is not a single reference to a CEA in the Hearing Officer's Decision and Order, thus, no ruling denying Plaintiffs a CEA. Since this issue was not presented at the due process hearing, there is no denial of a CEA for Plaintiffs to appeal or for this Court to consider.

Although the Third Circuit Opinion indicated that the Court "agree[d]" with Plaintiffs' argument "that their pro se [district court] complaint also brought claims for reimbursement and for compensatory education[,]" the Court therein continued further indicated: "The Moynihans sought reimbursement in the administrative proceedings. See [HOD at p. 10]. . . . Those claims are not moot." *Moynihan*, 813 F. App'x at 827. Consistent with the Third Circuit's citation to the Hearing Officer's Decision and Order, this Court finds that Plaintiffs assert only claims for reimbursement.

Notably, Plaintiffs first mentioned "compensatory education" in their Third Circuit appeal of this Court's decision dismissing Plaintiffs' claims. *See* ECF 30. In that appeal, Plaintiffs appear to use the terms "compensatory education" and "compensatory relief" interchangeably, though actually intending to refer to compensatory *damages*, which is an impermissible basis for relief (as this Court previously ruled and which the Third Circuit affirmed). Review of the transcripts from the due process hearing suggests that Plaintiff Karen Moynihan experienced the same confusion of terms during the hearings. Likely in an abundance of caution, Defendants make arguments in their underlying motion for judgment regarding Plaintiffs' lack of entitlement to a CEA. In contrast, the *only* mention of compensatory education in

**BACKGROUND**

To better understand the issue before this Court is summary of the procedural history and facts is warranted.

*Procedural History*

Plaintiffs, the parents of C.M., proceeding *pro se*, filed this action against Defendant West Chester Area School District pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*,[3] [ECF 2]. In their complaint, they appeal the decision issued by Pennsylvania Special Education Hearing Officer Charles W. Jelley (the "Hearing Officer"), after a due process hearing in which the Hearing Officer found that Defendant had provided C.M. with a free and appropriate public education ("FAPE") during the school years at issue and denied Plaintiffs' request for reimbursement of particular expenses.[4] Plaintiffs request that this Court

---

Plaintiffs' response, construed as their motion for judgement, is a single heading entitled: "The Hearing Officer Was Incorrect in both Denying Compensatory Education to Plaintiffs Since There Was A Clear Denial of FAPE By Defendants and the Hearing Officer was Incorrect in not Granting Reimbursement For School Taxes nor any Educational Expenses Plaintiffs' Incurred". Plf. Br., ECF 40 at p. 18 (emphasis in original). That heading precedes the argument section that only addresses remedies of reimbursement, not compensatory education or CEAs.

Construing all of Plaintiffs' filings liberally, and considering the decisions of the Hearing Officer and the Third Circuit opinion, this Court concludes that Plaintiffs have request and presented only a claim for reimbursement, and not a claim for a compensatory education award. Under these circumstances, the only issues before this Court on appeal: is whether the Hearing Officer erred in denying Plaintiffs relief in the form of *reimbursement*.

[3] The IDEA was amended and renamed the Individuals with Disabilities Education Improvement Act (the "Act"), effective July 1, 2005. *See* Pub. L. No. 108-446, 118 Stat. 2715 (2005). Notwithstanding this change in the name of the statute, courts and litigants, including the parties in this action, continue to refer to this statute as the IDEA. *See, e.g.*, *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 408 (3d Cir. 2017). For purposes of clarity and consistency, this Court will refer to the Act as the IDEA in this Memorandum Opinion.

[4] *See generally* Admin. R. Pt. 1, ECF 36, p. 9-61 (Ex. 2- Hearing Officer Decision and Order).

For the remainder of this Opinion, citations to the Hearing Officer's Decision and Order will be in the following form: "HOD at p. #" where the page number refers to the pagination of ECF 36, without differentiating among the various exhibits that make up the complete administrative record. Within ECF 36, Exhibit 2 (Hearing Officer Decision and Order) begins on page nine (9).

"completely reverse the [d]ecisions of [the Hearing Officer] . . . and find in [their] favor in all matters set forth therein." Compl. at p. 19.

Defendant filed a *motion for judgment on the pleadings* pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), arguing for the dismissal of the complaint because Plaintiffs' claims are precluded by pre-existing agreements. [ECF 22]. Plaintiffs opposed the motion. [ECF 23]. In its initial review, this Court dismissed the complaint for lack of subject matter jurisdiction. [ECF 25, 26]. Plaintiffs appealed to the Third Circuit, which remanded this matter for further proceedings.

Presently before this Court is Defendant's renewed *motion for judgment on the administrative record*, [ECF 37], which seeks the affirmance of the Hearing Officer's Decision and Order and the enforcement of the Waiver (settlement) agreement which Defendant contends bars Plaintiffs' claim. Plaintiffs filed a response in opposition to Defendant's motion, [ECF 40], which this Court liberally construed as their cross-motion for judgment on the administrative record. As noted, the issue before this Court is whether the Hearing Officer erred in finding that Plaintiffs are not entitled *to the remedy of reimbursement for out-of-pocket expenses* because Defendant did not deny C.M. a FAPE.

*Summary of Facts*

Plaintiffs filed several due process complaints with the Pennsylvania Office for Dispute Resolution alleging that Defendant denied a FAPE to their then-minor child, C.M.,[5] when enrolled in the ninth, tenth, and eleventh grade school years (the 2013-14, 2014-15, and 2015-16 academic years, respectively). As a remedy for the alleged FAPE denials, Plaintiffs sought "reimbursement for payment of school taxes and out of pocket expenses, *i.e.*, reimbursement for the 9th grade, 10th grade and 11th grade school years." HOD at p. 10. During the administrative proceedings,

---

[5] C.M. is diagnosed with several disabilities that affect his learning ability.

Defendant sought to enforce a settlement agreement reached between the parties in 2015 that Defendant argued barred Plaintiffs' claims. After a lengthy due process hearing, the Hearing Officer agreed, denied Plaintiffs' FAPE claims and found that Defendant *had* provided C.M. with a FAPE during the academic years at issue and further found that Plaintiffs were not entitled to reimbursement or other relief. *Id*. at p. 44. The Hearing Officer also found that the Waiver settlement agreement was a valid agreement, but he lacked the legal authority to enforce it.

**LEGAL STANDARD OF REVIEW**

When a party files a due process complaint under the IDEA and a hearing officer renders an unfavorable decision on that due process complaint, that party is considered "aggrieved" and, as such, has the "right to bring a civil action with respect to the complaint presented . . . in a district court of the United States" appealing that decision. 20 U.S.C. § 1415(i)(2)(A). In such cases, the district court "shall grant such relief as the court determines is appropriate" and "bas[e] its decision on the preponderance of the evidence" after review of the records of the administrative proceedings and, if requested by a party, additional evidence. 20 U.S.C. § 1415(i)(2)(C). The court's applicable standard of review is a modified *de novo* review, described as follows:

> Under the IDEA, the reviewing court is obliged to conduct a modified *de novo* review, giving "due weight" to the underlying administrative proceedings. Factual findings from the administrative proceedings are to be considered *prima facie* correct. If a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities.

*S.H. v. State-Operated Sch. Dist*., 336 F.3d 260, 270 (3d Cir. 2003) (internal quotations, citations, and alterations omitted). Under this modified standard, the reviewing court is "required to defer to the [hearing officer]'s factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record." *Id*. Further, "[w]here the District Court does not hear additional evidence it must find support for any factual conclusions contrary to the [Hearing Officer]'s in the record

before it." *Id*. The burden of proof on appeal continues to be on the party that sought relief at the administrative due process hearing; here, Plaintiffs. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391-92 (3d Cir. 2006) (citing *Schaffer v. Weast*, 546 U.S. 49 (2005)).

Additionally, "courts must accord special care to pro se claimants, liberally construing their filings and holding them to less stringent standards than formal pleadings drafted by lawyers[.]" *In re Energy Future Holdings Corp*, 949 F.3d 806, 824 (3d Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other internal quotations, citations, and alternations omitted).

**DISCUSSION**

As noted, the issue before this Court is whether the Hearing Officer erred in finding that Plaintiffs were not entitled to the remedy of reimbursement for out-of-pocket expenses because Defendant had not deny C.M. a FAPE during the relevant academic years. Specifically, the reimbursement Plaintiffs sought and which were denied were the following expenses:[6] (1) a refund of the school taxes Plaintiffs paid from 2013 to 2016; (2) the cost of a private Algebra II tutor for C.M. from February to June of 2016; (3) the cost of a summer online Algebra course that C.M. took in the summer of 2016; and (4) the cost of C.M.'s continued weekly psychotherapy with Dr. Tjitske Milks which commenced August 2016.

In its motion, Defendant argues that Plaintiffs' request for reimbursement of school taxes is impermissible as a matter of law, and further that Plaintiffs are not entitled to reimbursement for

---

[6] Although not concisely listed in any of Plaintiffs' filings, this list of expenses was composed from this Court's independent review of the following sources: Plf. Br., ECF 40 at p. 15, 18; Def. Br., ECF 37-1 at p. 1-2, 19; Admin. R. Pt. 1, ECF 36, p. 136 (Ex. 4- Plf. Written Closing); Admin. R. Pt. 1, ECF 36, p. 70 (Ex. 3- Def. Written Closing); Admin. R. Pt. 1, ECF 36, pp. 588, 843, 895-96, 1158, 1163-65 (Ex. 8- Hearing Transcript Dec. 5, 2017; Ex. 11- Hearing Transcript September 28, 2017; Ex. 15- Hearing Transcript Aug. 10, 2017); HOD at p. 10.

the other expenses claimed because Plaintiffs contractually waived those claims when the parties executed a Waiver settlement contract.[7] This Court will address Defendant's arguments *seriatim*.

*I. Reimbursement for Taxes*

Under the IDEA, if a child is denied a FAPE, plaintiffs can seek reimbursement "for out-of-pocket expenses that the school district should have paid all along and would have borne in the first instance had it developed a proper IEP" (individualized education plan) for the disabled student]." *Sch. Dist. of Phila. v. Kirsch*, 722 F. App'x 215, 226 (3d Cir. 2018) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 184 (3d Cir. 2009)). Therefore, any expense that can serve as a basis for reimbursement must be an expense that Defendant "should have" and "would have" paid all along had Defendant "developed a proper IEP" for C.M.

Among the out-of-pocket expense claimed, Plaintiffs seek the reimbursement or refund of the school taxes they paid to Defendant in 2013 through 2016. Defendant argues that this reimbursement request is impermissible because Plaintiffs' school real estate and income taxes are not an expense for which Defendant would have been responsible in the course of its obligation to provide C.M. a FAPE through a proper IEP. This Court agrees.

Plaintiffs' school real estate and income taxes paid to Defendant, in its capacity as Plaintiff's local school district, are not an expense that Defendant, or any LEA, could be responsible for paying as part of a student's IEP. Under the IDEA, LEAs have a duty to provide a FAPE to children with qualifying disabilities, which includes the responsibility of "providing special education services to students with disabilities." *R.B. v. Mastery Charter Sch.*, 762 F.

---

[7] In its motion, Defendant also argues that Plaintiffs are not entitled to reimbursement because (1) Defendant *did* provide C.M. with a FAPE during the relevant academic year (2015-16, *see infra* n.14), thus, there is no violation to remedy, and (2) to the extent that the reimbursement claim is based on allegations of C.M. being bullied in school, the evidence shows that C.M. was not, in fact, bullied. Since Defendant's other arguments (regarding taxes and the settlement agreement) are dispositive of Plaintiffs' claim, this Court need not address these additional arguments.

Supp. 2d 745, 752-53 (E.D. Pa. Dec. 29, 2010) (quoting 22 Pa. Code § 711.3 and citing 34 C.F.R. § 300.209(c)). This duty includes the obligation to develop and implement "an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). Quite simply, paying a qualifying student's parents' income or property taxes cannot be reasonably characterized as a LEA "providing special education services" to the student, or a benefit or service "reasonably calculated to enable a child to make progress" in school.[8] Further, Plaintiff has not cited to any supporting case law, section of the IDEA, or other regulation or statute that authorizes reimbursement of school taxes as a remedy for an IDEA violation. Indeed, this Court, Defendant, and the Hearing Officer are equally unable to identify any such rule of law.[9] Accordingly, this Court finds, as a matter of law, that Plaintiffs' real estate and school taxes cannot serve as the basis for a reimbursement claim under the IDEA. Therefore, Defendant's motion for judgment on the administrative record on this argument is granted.

---

[8] As further explanation and clarification, school real estate taxes are levied on *all* property owners (not just those with school-aged children) and school income taxes are levied on *all* residents (not just those with school-aged children) within a particular school district. Plaintiffs' expenses of paying school income and real estate taxes to Defendant from 2013 to 2016 are expenses based on their status as property owners and/or residents in the school district, *not* based on their status as parents of a student attending school in the school district. Plaintiffs' tax expenses were not payments to Defendant for the purpose of Defendant educating their child; rather, they were payments required to support their geographic community, by way of funding the local school system.

[9] *See* Admin. R. Pt. 1, ECF 36, p. 896 (Ex. 12- Hearing Transcript Sept. 27, 2017; Transcript 514:20-515:25) (Hearing Officer explaining he is "not familiar" with anything permitting a refund of tax dollars as reimbursement); Def. Br., ECF 37-1 at p. 20 ("The IDEA does not consider reimbursement of school taxes to be a permissible remedy. There is also no case law under IDEA that permits reimbursement of school taxes.")

*II. Reimbursement for Other Expenses*

Plaintiffs also request reimbursement for the cost of a private tutor, a summer course, and C.M.'s psychotherapy, all of which are cognizable bases for reimbursement under the IDEA if a FAPE was denied.[10] As noted, any expense that can serve as a basis for reimbursement must be an expense that Defendant "should have" and "would have" paid all along had Defendant "developed a proper IEP" for C.M. *See Kirsch*, 722 F. App'x at 226 (quoting *Chambers*, 587 F.3d at 184). Thus, for these particular expenses, Plaintiffs essentially argue that C.M.'s IEPs were deficient and should have included these particular services for which they now seek reimbursement, and that by failing to develop a proper IEP that included these particular services, Defendant denied C.M. a FAPE. In its motion, Defendant argues, *inter alia*, that Plaintiffs are not entitled to reimbursement for any of these expenses because Plaintiffs contractually waived any FAPE claims against Defendant and, therefore, Plaintiffs' claims are barred.

There is no dispute that the parties met to discuss the IEP for C.M's 2015-2016 school year. A dispute arose regarding the courses C.M. would take—Plaintiffs wanted C.M. to take honor classes that were different from the classes C.M. would be enrolled in under the Proposed November IEP.[11] On November 13, 2015, the parties entered into a settlement agreement entitled "Waiver Agreement and Release" (the "Waiver")—a type of contract expressly contemplated by the IDEA.[12] In the Waiver, Plaintiffs specifically acknowledged that the IEP, with a revision date

---

[10] These remaining three item requests for reimbursement all stem from Plaintiff's contention that Defendant failure to provide C.M. with a FAPE during C.M.'s eleventh grade school year (2015-16 academic year). Accordingly, only C.M's IEPs in place during that time span are relevant to the forthcoming analysis.

[11] Waiver Agreement, ECF 12-3, ¶¶ 1-2.

[12] *See* 20 U.S.C. § 1415(f)(1)(B)(iii) ("Written settlement agreement. In the case that a resolution is reached to resolve the complaint at a [resolution session preliminary meeting], the parties shall execute a legally binding agreement that is—(I) signed by both the parent and a representative of the agency who has

of November 5, 2015 (proposed by Defendant) ("Proposed November IEP") was an offer of a FAPE.[13] The Waiver embodied the agreement between the parties to resolve the dispute over which courses C.M. would take.[14] Specifically, under the terms of the Waiver, Defendant agreed: (1) not to enroll C.M. in the courses listed in the Proposed November IEP and, instead, to enroll C.M. in the courses Plaintiffs requested;[15] (2) "to implement the specially design instruction" described in the Proposed November IEP; and (3) to provide C.M. with "a check-in period with a special education teacher 3 days per 5 day cycle."[16] In exchange for these promised actions by Defendant, Plaintiffs agreed to "waiv[e their] rights, whether known or unknown, that they and [C.M.] may otherwise have to claims arising or relating to the failure to fully implement the [Proposed November IEP] under the [IDEA] and its implementing regulation [and several other federal and state laws governing the education of students with disabilities]."[17]

Despite Defendant fulfilling its obligations under the Waiver for several months, Plaintiffs now contend that the Waiver is unenforceable because they were "forced" or "coerced" into

---

the authority to bind such agency; and (II) enforceable in any State court of competent jurisdiction or in a district court of the United States.").

[13] HOD at p. 29, Finding of Fact ("FF") 100.

[14] HOD at p. 29, FF 99.

[15] The courses listed in the Proposed November IEP included: Academic English 11, Academic Algebra II, Academic American History, Academic Earth Space Science, Honors German 3, Concert Band/Choir, and Physical Education. Admin. R. Pt. 8, ECF 36-7, p. 60 (Ex. 18- Def. Exhibits (Ex. 6)). The courses Plaintiffs requested that C.M. take, and which C.M. did take, included: Honors English 11, Honors Algebra II, Honors American History, Honors Earth Space Science, Honors German 3, Concert Band/Choir, and Physical Education. HOD at p. 54; Waiver Agreement, ECF 12-3, ¶ 2.

[16] Waiver Agreement, ECF 12-3, ¶¶ 2-4.

[17] *Id*. at ¶ 6.

signing it.[18] Defendant disputes that allegation and argues that Plaintiffs were not coerced and, to the contrary, were aware of their rights, had the opportunity to consult with counsel regarding the Waiver, and were satisfied with their counsel.[19] The Hearing Officer found that Plaintiffs were not coerced into signing the Waiver and that the Waiver was a valid settlement agreement.[20] This Court reviews the Hearing Officer's conclusions of law *de novo*.[21]

When a settlement agreement (made consistent with the IDEA's procedural safeguard provisions in 20 U.S.C. § 1415) "was voluntarily and willingly entered by the parties[, i]t is therefore a binding contract between the parties and should have been enforced as written." *D.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 898 (3d Cir. 1997); *see also Dept. of Educ. v. D.E.*, 2019 WL 1505859, at *6 (E.D. Pa. April 5, 2019) (citing *D.R.*, 109 F.3d at 898). In cases involving such settlement agreements, "the appropriate law to apply is state contract law." *D.E.*, 2019 WL 1505859, at *6 (citing *J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011)); *see also Jada H. v. Rivera, et al.*, 2019 WL 448893, at *4 (E.D. Pa. Feb. 4, 2019) (citing *D.R.*, 109 F.3d at 898).

---

[18] Though Plaintiffs do not explicitly make this argument in their motion or other filings before this Court, the Hearing Officer's decision makes it clear that Plaintiffs' argument against enforcement of the Waiver was that of coercion/duress. *See* HOD at p. 11, 52, 54.

[19] Def. Br., ECF 37-1 at p. 14.

[20] A hearing officer has the authority to decide whether a valid settlement agreement exists; however, only a "State court of competent jurisdiction or [a] district court of the United States" can *enforce* such an agreement. 20 U.S.C. § 1415(f)(1)(B)(iii)(II). *See Jada H.*, 2019 WL 448893, at *1 ("Settlement agreements cannot be enforced by Hearing Officers, but Hearing Officers do have authority to determine whether a binding settlement agreement exists[.]") (internal citations omitted); *West Chester Area Sch. Dist. v. A.M., et al.*, 164 A.3d 620, 630-31 (Pa. Commw. Ct. 2017) (citing *J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436, 448 (E.D. Pa. 2011)); *South Kingstown Sch. Comm. v. Joanna S.*, 2014 WL 197859, at *11 (D.R.I. Jan. 14, 2014), *aff'd*, *South Kingstown Sch. Comm.*, 773 F.3d 344 (1st Cir. 2014) (explaining that some district courts have applied the statute as written, but some district courts have contrarily held that hearing officers can enforce IDEA settlement agreements). Accordingly, this Court shall decide in the first instance whether to enforce the Waiver here.

[21] *See Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995) ("Obviously, conclusions of law receive plenary review.").

In Pennsylvania, "[d]uress is defined as that degree of restraint or danger, either actually inflicted or impending, which is sufficient in severity or apprehension to overcome the mind of an individual of ordinary firmness." *West Chester Area Sch. Dist.*, 164 A.3d at 627 (citing *Bata v. Central–Penn Nat'l Bank of Phila.*, 423 Pa. 373 (1966) and *Hamilton v. Hamilton*, 591 A.2d 720 (Pa. Super. 1991)). Here, the precise issue whether Plaintiffs were coerced into signing the Waiver was appealed to the Pennsylvania Commonwealth Court, which issued a decision noting that "[u]nder Pennsylvania law, where a contracting party is free to come and go and consult with counsel, there can be no duress without threats of bodily harm;" *West Chester Area Sch. Dist. v. A.M., et al.*, 164 A.3d 620, 626 (Pa. Commw. Ct. 2017) (citing *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975) and *Carrier v. William Penn Broad. Co.*, 426 Pa. 427 (1967)) and finding that Plaintiffs were not coerced into signing the Waiver. Specifically, the Commonwealth Court held that, "we discern no error in the Hearing Officer's determination that Parents [Plaintiffs} did not present sufficient evidence of duress. Rather, the District [Defendant] agreed to consent to Parents' demands that Student remain in honors courses based on Parents' agreement to waive any claims against the District based on the results of their request. Given these circumstances, we reject Parents' argument that the signed the Waiver Agreement under duress."

After a careful modified review of the record, this Court agrees with the legal conclusions reached by the Hearing Officer in applying the applicable law to the Waiver, which was notably affirmed by the Pennsylvania Commonwealth Court, and finds, based on the preponderance of evidence, that Plaintiffs did not enter into or signed the Waiver agreement under duress, force, or coercion. Plaintiffs were not threatened with any bodily harm or deprived of the assistance of counsel; to the contrary, Plaintiffs consulted with their attorney, Ms. Linda Heller, Esq. Thus,

under Pennsylvania law, Plaintiffs were not under duress. *See West Chester Area Sch. Dist.*, 164 A.3d at 627 (citing *Bata*, 423 Pa. at 373 and *Hamilton*, 591 A.2d at 720). Further, Plaintiffs explicitly acknowledged in the Waiver:

> (a) that they ha[d] received written notification of their rights under state and federal law as the parents of a child with disabilities; (b) that they [were] fully aware of these rights and of the extent to which they [were] waiving them in [the Waiver]; (c) that they [were] fully aware that they [were] waiving rights on behalf of [C.M.]; (d) that they have had the opportunity to consult with counsel if they so desired, concerning their rights and this [Waiver]; (e) that they are satisfied with the representation and advice that they have received from their counsel, if any, including that they have received an adequate explanation of the terms and obligations described by [the Waiver]; (f) that they have had sufficient time to consider the terms and obligations described by [the Waiver]; and (g) that they understand the nature and scope of [the Waiver], and are signing [the Waiver], including this waiver of important rights, knowingly and voluntarily.[22]

Waiver Agreement, ECF 12-3, ¶ 6. Such express acknowledgment is further evidence of a lack of coercion and/or duress. *See, e.g.*, *Forrester v. Solebury Township*, 2021 WL 662290, at *6 (E.D. Pa. Feb. 19, 2021) (citing the same standard for duress and finding no duress where signer of settlement agreement did not allege threats of actual bodily harm and "explicitly acknowledged in the Agreement that he had been given sufficient time to consider the Agreement . . . prior to executing it and . . . had the opportunity to consult with personal counsel . . . [and] further acknowledged he was 'fully satisfied' with his counsel's representation, he carefully read and fully understood the Agreement's provisions, and he entered into the Agreement 'knowingly and voluntarily.'") (internal alterations omitted).

Further, additional evidence against the existence of coercion or duress, properly relied on by the Hearing Officer, is found in the Waiver provision that allows Plaintiffs to terminate the Waiver at any time by providing written notice to Defendant, which would result in immediate,

---

[22] Andrew Moynihan confirmed his awareness of these acknowledgments at the Due Process Hearing when he testified: "of course we [(Plaintiffs)] read the document before we signed it." Admin. R. Pt. 1, ECF 36, p. 636 (Ex. 8- Hearing Transcript Dec. 5, 2017; Transcript 1505:12-15)

full implementation of the Proposed November IEP and a new IEP meeting for C.M. *See* Waiver Agreement, ECF 12-3, ¶ 5; *see also* HOD at p. 56. For all of these reasons, as in *Bata*, "this is not a case where an ignorant person, unrepresented by a lawyer, was forced into an unconscionable settlement[.]" *Bata*, 423 Pa. at 381. To the contrary, the evidence supports the Hearing Officer's finding that Plaintiffs were not subject to any force, duress, or coercion when they agreed to the Waiver.

Notwithstanding this conclusive evidence, Plaintiffs argue that they signed the Waiver "reluctantly" and had to decide whether to sign it by 3:00 pm on a Friday or else "Defendants would place C.M. in the lower level academic courses the following Monday[.]" Plf. Br., ECF 40 at p. 14. At the due process hearing, Plaintiff Andrew Moynihan testified: "I felt that at the time we didn't have any choice. . . . there would have been certain things that would have happened to [C.M.] if we didn't sign it. . . . [C.M.] wouldn't have been in the position that we wanted him to be in." Admin. R. Pt. 1, ECF 36, p. 636 (Ex. 8- Hearing Transcript Dec. 5, 2017; Transcript 1505:15-24). Mr. Moynihan went on to clarify that the "certain things" were that C.M. would be placed in the lower-level classes that Plaintiffs did not want C.M. in because they believed students in the lower-level classes were bullying C.M. *Id*. at 1507:19-25,1508:1-15. He also testified that "[Plaintiffs] were concerned that [C.M.] would—[Plaintiffs] learned [C.M.] would lose certain things, and that's why [Plaintiffs] felt coerced into it in that sense." Admin. R. Pt. 1, ECF 36, p. 635 (Ex. 8- Hearing Transcript Dec. 5, 2017; Transcript 1504:12-20). Similarly, at the due process hearing, Plaintiff Karen Moynihan stated that "requesting that we sign a waiver and release, releasing [Defendant] from liability should [C.M.] not perform well as a result of not receiving the appropriate direct instruction, to me, is forcing." Admin. R. Pt. 1, ECF 36, p. 1116 (Ex. 14- Hearing Transcript Sept. 22, 2017; Transcript 248:10-16). However, as the Commonwealth Court

stated, "duress is not established in Pennsylvania by merely showing a promise under pressure." *West Chester Area Sch. Dist.*, 164 A.3d at 626-27. The Commonwealth Court further noted that the Waiver agreement was forward to Plaintiff on November 6, 2015, executed and returned on November 13, 2015. Plainly, what Plaintiffs described does not constitute coercion or duress under the aforementioned applicable Pennsylvania law. While it may have been a difficult decision for Plaintiffs to make, that inherent pressure does not render their consent to the Waiver invalid by way of duress, coercion, or force.

For all of the aforementioned reasons, this Court finds—as did the Hearing Officer and affirmed by the Commonwealth Court—that Plaintiffs were not coerced into signing the Waiver and further finds—as did the Hearing Officer—[23]that the Waiver is a valid, enforceable settlement agreement.

*A. Enforcement of the Waiver*

The Hearing Officer recognized his lack of jurisdiction to enforce the Waiver.[24] Statutorily, the authority to enforce a settlement agreement falls to the appropriate state court or federal court. *See* 20 U.S.C. § 1415(f)(1)(B)(iii)(II); *see also Octavia A. v. Sch. Dist. of Phila.*, 2019 WL 1468926, at *4 (E.D. Pa. April 2, 2019); *West Chester Area Sch. Dist.*, 164 A.3d at 631 (citing 20 U.S.C. § 1415(f)(1)(B)(iii) and *J.K.*, 833 F. Supp. 2d at 448.[25]

---

[23]  *See* HOD at p. 56, 60.

[24]  *See supra* n.25.

[25]  *See also South Kingstown Sch. Comm. v. Joanna S.*, 2014 WL 197859, at *12 n.12 (D.R.I. Jan. 14, 2014), *aff'd*, *South Kingstown Sch. Comm.*, 773 F.3d 344 (1st Cir. 2014) ("enforcement of IDEA settlement must be made in context of [a] motion for summary judgment based on state law governing contract interpretation[.]") (citing *Stephen H. v. W. Contra Costa Cnty. Unified Sch. Dist.*, 2007 WL 1557482, at *2 (N.D. Cal. May 29, 2007)).

"Pennsylvania law recognizes a release of claims as an affirmative defense." *I.K. ex rel. B.K. v. Sch. Dist. of Haverford Township*, 961 F. Supp. 2d 674, 703, 301 Ed. Law Rep. 647 (E.D. Pa. Aug. 14, 2013). "For releases to be enforceable they must be 'clear and unambiguous' and the language must 'be specific and particular to the legal rights' subject to waiver." *Id*. (citing *Ecksel v. Orleans Construction Co.*, 519 A.2d 1021, 1025 (Pa. Super. Ct. 1987)).

Here, the release provision in the Waiver provides, in relevant part:

> [Plaintiffs] acknowledge and affirm that . . . they are waiving rights, whether known or unknown, that they and [C.M.] may otherwise have to claims arising or relating to the failure to fully implement the [Proposed November IEP] under the [IDEA] and its implementing regulation [and several other federal and state laws governing the education of students with disabilities]. Waivers as described herein shall be applicable from the execution of this Waiver Agreement through the start of the 2016-2017 school year or until such time as [Plaintiffs] make a written request . . . to terminate this Waiver.

Waiver Agreement, ECF 12-3, ¶ 6. The language in this provision is clear and unambiguous, specifically regarding the scope of the rights and claims waived. Specifically, the scope includes claims (1) that arise or relate to Defendant's failure to fully implement the Proposed November IEP; (2) that fall under the IDEA and its implementing regulation; and (3) that are based on occurrences from the date of execution (November 13, 2015) through the start of the 2016-2017 school year. *Id*.

Plaintiffs' remaining claim is dependent on the existence of a denied FAPE claim for the 2015-16 academic year, to the limited extent that such an alleged FAPE denial could entitle Plaintiffs to the remedy of reimbursement for the cost of a private tutor, the cost of an online summer course, and the cost of psychotherapy. After careful review of the Waiver, this Court finds that Plaintiffs' claim and the corresponding remedies sought plainly fall within the scope of the Waiver. Plaintiffs' claim is brought under the IDEA, one of several laws unambiguously identified in the Waiver as those under which Plaintiffs cannot assert a claim. Plaintiffs' claim

also is based on the alleged denial of FAPE in the 2015-2016 school year, a claim within the Waiver's applicable time period.[26] Lastly, Plaintiffs' claim relates to Defendant's alleged actions taken as a result of not fully implementing the Proposed November IEP [2015]. Plaintiffs' claim is based on allegations that Defendant denied C.M. a FAPE by: (1) not fully implementing the Proposed November IEP but, instead, (2) allowing Plaintiffs to override the school's recommendations, and (3) then failing to take specific actions requested by Plaintiffs once C.M. continued to perform poorly. Based on these allegations, Plaintiffs' claim and the remedies sought are barred by the terms of the Waiver. Plaintiffs cannot avoid their obligations under the Waiver.[27] Accordingly, Defendant's motion for judgment on the administrative record is granted and Plaintiffs' motion for judgment on the administrative record is denied.[28, 29]

**CONCLUSION**

For the reasons set forth herein, the Hearing Officer's decision denying Plaintiffs' FAPE claim and request for reimbursement is affirmed. Based on the preponderance of evidence, this Court finds the parties' settlement agreement (the Waiver) is a valid and enforceable agreement. As such, under the terms of the Waiver, Plaintiffs are barred from bringing any claims that fall

---

[26] The Waiver defined the applicable time period as from the date of execution (November 13, 2015) until the start of the 2016-17 academic year. Plaintiffs' claim falls squarely within this time period, as it is based on allegations that occurred during the 2015-16 academic year.

[27] *See*, *e.g.*, *D.R.*, 109 F.3d at 901 (upholding IDEA settlement agreement and expressing concern "that a decision that would allow parents to void settlement agreements when they become unpalatable would work a significant deterrence contrary to the federal policy of encouraging settlement agreements."); *see also South Kingstown Sch. Comm. v. Joanna S.*, 773 F.3d 344, 356, 312 Ed. Law Rep. 507 (1st Cir. 2014) ("when parties [resolve IDEA disputes through settlements], the settlements must be given appropriate effect.").

[28] Because the analysis of Defendant's argument regarding the Waiver is dispositive of Plaintiffs' remaining claim, this Court need not address Defendant's other arguments.

[29] *See supra* n.30.

within the scope of the Waiver.  This Court further finds that Plaintiffs' remaining claim(s) fall within the scope of the Waiver agreement and are, therefore, barred.  Accordingly, Defendant's motion for judgment on the administrative record is granted, and Plaintiffs' opposition/motion for judgment on the administrative record is denied.  Judgment is entered in favor of Defendant.  Accordingly, Orders consistent with this Memorandum Opinion follow.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.